UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD HOWARD,<br><br>                    Plaintiff,<br><br>v.<br><br>POWERHOUSE COACH, INC. et al.,<br><br>                    Defendants. | Case No. 3:24-cv-02031-L-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**<br><br>[ECF No. 12] |

Pending before the Court is Defendants Powerhouse Coach, Inc. ("Powerhouse"), Doug Tolbert, Beckie Tolbert, and Todd Tolbert's (collectively, "Defendants") motion to dismiss for lack of personal jurisdiction and venue or, in the alternative, transfer to the United States District Court for the District of Idaho. (ECF No. 12.)  Plaintiff Edward Howard filed an opposition, and Defendants filed a reply.  (ECF Nos. 15, 18.)  This matter is appropriate for decision without oral argument.  *See* Civ. L. R. 7.1(d)(1).  For the reasons stated below, this action is TRANSFERRED to the District of Idaho.

**A.    BACKGROUND**

Plaintiff brings this action against Powerhouse Coach, Inc., an Idaho corporation, and three of its owners and employees over the construction and sale of a custom motor

/ / / / /

1

coach gone wrong.[1]  On or about November 28, 2022, Plaintiff entered a contract with Defendants for a custom-built Quad Slide Motor Home.  Defendants were to design and construct the motor coach in a timely manner.  Plaintiff alleges that numerous issues occurred after entering the contract, including Defendants

> delaying work, failing to install items required under the contract forcing Plaintiff to purchase merchandise and materials, failing to supervise work on the project, failing to complete the work in a proper and workmanlike manner, failing to construct the custom motor coach in a manner consistent with commercial customs, practices and standard of care in the industry, overbilling for alleged services and materials, failing to provide a credit for work not performed, failing to install items required under the contract, failing to provide the custom motorcoach free from defects and in accordance with applicable codes, failing to provide CAD drawings, failing to properly and securely install batteries, failing to properly install the stove and washing machine, failing to correct problems and issues brought to their attention, failing to install properly working tank systems, and failing to make corrective repairs requested by Plaintiff.

(Compl. ¶ 14.)

Plaintiff brings claims for breach of contract, negligence, intentional misrepresentation, negligent misrepresentation, unfair and deceptive business practices, unjust enrichment, alter ego, reformation of contract, breach of warranty, and violation of the California Consumer Legal Remedies Act ("CLRA").  He seeks compensatory and punitive damages, costs, injunctive relief, and attorneys' fees.  The Court has subject matter jurisdiction under 28 U.S.C. § 1332.  Defendants move to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) or 12(b)(3)[2], or, in the alternative, transfer to the District of Idaho pursuant to 28 U.S.C. §§ 1406(a) and 1404(a).

---

[1]     All background facts are taken from the first amended complaint.  (ECF No. 11 ("Compl.").)

[2]     All future references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

**B.    DISCUSSION**

**1.    Personal Jurisdiction**

A complaint may be dismissed for lack of personal jurisdiction under Rule 12(b)(2).  When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that such jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).[3]

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1).  Plaintiff has served a summons on Defendants, and Defendants do not contest this.  Accordingly, if Defendants are subject to the jurisdiction of a court of general jurisdiction in California, this Court has personal jurisdiction.

It is undisputed that Defendants are nonresidents of California.  "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994).

California's long-arm statute provides that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10.  This statute allows courts to exercise personal jurisdiction within the limits of due process. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 863 (9th Cir. 2003).  It follows that compliance with constitutional due process satisfies both parts of the test for personal jurisdiction. *See Walden v. Fiore,* 571 U.S. 277, 283 (2014).

/ / / / /

---

[3]    Internal citations and quotation marks may be removed unless otherwise noted.

Due process demands that a nonresident defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). This minimum contacts requirement can be satisfied by establishing either general or specific jurisdiction. *Schwarzenegger*, 374 F.3d at 801–02. Plaintiff only claims specific jurisdiction over Defendants.

A three-part test applies to determine whether a party is subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). "If the plaintiff succeeds in satisfying both of the first two prongs [of the test for minimum contacts], the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Where, as here, "the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* That is, the plaintiff need only demonstrate facts that support a finding of jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In determining whether the plaintiff has met this burden, the Court "may not assume the

truth of allegations in a pleading which are contradicted by affidavit," *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), but "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor," *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Defendants argue that they have not purposefully availed themselves of the privileges of conducting activities in California, the case does not arise out of or relate to forum-related activities, and that exercise of jurisdiction in California does not comport with fair play and substantial justice. Plaintiff opposes Defendants' contentions.

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Mavrix*, 647 F.3d at 1228. While they are distinct concepts,

> [a]t bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Burger King*, 471 U.S. at 474–75). Nevertheless, the first element of the minimum contacts test applies differently in tort and contract cases. *Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

In contract cases, courts inquire whether the defendant "purposefully avails itself of the privilege of conducting activities or consummate[s] [a] transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Id*. In tort cases, the court generally applies the effects test to determine whether the defendant purposefully directs its activities at the forum state, regardless of whether the actions themselves occurred within the forum. *Id.* Defendants argue that the test for purposeful availment should apply in this case and Plaintiff does not dispute this.

While this case presents both contract and tort-based claims, at bottom the dispute is whether Defendants breached their obligations under the contract to manufacture a

custom motor coach according to Plaintiff's specifications. The Court will therefore consider whether Defendants purposefully availed themselves of the privilege of conducting business, or consummated a transaction, in California such that they could be haled into court in this state. *See Boschetto*, 539 F.3d at 1016 (case arising from a purchase transaction and alleging breach of contract, fraud, and CLRA claims found to "sound primarily in contract" and analyzed under purposeful availment test).

The parties filed affidavits with jurisdictional facts. Plaintiff first became aware of and located Powerhouse through an internet search. (ECF No. 15-1 ("Howard Dec.") ¶¶ 1-2.) The parties negotiated the contract by phone, email, and text over months while Plaintiff was in California and Defendants in Idaho. (*Id.* ¶ 2.) During negotiations Plaintiff informed Defendants that he was in California. (*Id*. ¶¶ 2-5.) When the parties agreed on contract terms, Plaintiff signed the contract in California. (*Id.* ¶ 3.) During construction, Defendants contacted Plaintiff in California several times. (*Id.* ¶ 5.) Plaintiff made payments to Defendants through California banks. (*Id*. ¶ 4.) The bill of sale states that the motor coach was sold to Plaintiff "Edward Howard" of "San Diago [sic] CA." (*Id*. Exh. A.) The bill of sale shows that Defendants did not charge or collect any sales tax on the transaction, which Plaintiff argues shows that Defendants knew they were selling the motor coach to an out-of-state resident. (*Id.*) After Plaintiff picked up the motor coach in Idaho, he returned to Powerhouse three times for Defendants to attempt to make repairs. (*Id.* ¶ 8.) Plaintiff eventually drove the motor coach to California where it is currently located. (*Id.*)

Defendants submitted affidavits with additional facts. Powerhouse is an Idaho corporation located and headquartered in Bonneville County, Idaho. (ECF No. 12-2 ("Tolbert Decl.") ¶ 9.) The individual Defendants are Idaho residents. (*Id.* ¶ 3; ECF No. 12-1, Beckie Tolbert Decl.; ECF No. 12-4, Todd Tolbert Decl.) Powerhouse maintains a single website that does not have any interactive features but provides general and contact information only. (ECF No. 18-1 ("Second Tolbert Decl.") ¶ 7.) Powerhouse's operations, including the design and assembly of custom coaches and contract

negotiations, are performed exclusively in Idaho. (Tolbert Decl. ¶ 9.) Powerhouse conducts no regular business or advertising in California. (*Id*.) Powerhouse does not do any direct marketing in California and does not contract with third parties to sell its motor coaches outside of Idaho. (*Id*. ¶¶ 10, 11.)

Plaintiff approached Powerhouse about purchasing a motor coach. (*Id.* ¶ 13.) When Plaintiff became interested, he drove to Idaho to look at motor coaches Powerhouse was constructing. (*Id*. ¶ 12.) Plaintiff also travelled to Idaho to discuss the terms of the contract. (¶ 14.) No contract negotiations occurred in California. (*Id.*)

Defendants executed the contract in Idaho. (*Id.*) The contract provides that the parties "agree to be subject to exclusive jurisdiction" in Idaho. (*Id*. ¶ 15 & Ex. A at 2.) The contract includes a two-year limited warranty which requires the customer to bring the motor coach to Defendants for repair in Idaho. (Tolbert Decl. ¶ 16; *see also id.* Ex. A at 1; Ex. B (warranty).) Plaintiff submitted all payments for the motor coach, including checks and wire transfers, to Powerhouse in Idaho. (*Id*. ¶ 17.)

All work related to the motor coach, including design, construction, and testing, was performed in Idaho. (*Id.* ¶ 22.) Plaintiff travelled to Idaho multiple times to inspect the project in progress and address any issues. (*Id*. ¶¶ 18, 20.) Plaintiff took possession of the motor coach in Idaho. (*Id*. ¶ 20.) Doug Tolbert was informed Plaintiff was taking the motor coach to Montana. (*Id*. ¶ 21; *see also id.* ¶ 13.) Accordingly, Powerhouse did not charge any sales tax on the motor coach. (Second Tolbert Decl. ¶ 2, 4 & Ex. A.) Plaintiff returned to Idaho for warranty work. (Tolbert Decl. ¶ 21.)

"The primary focus of … personal jurisdiction inquiry is the defendant's relationship with the forum state." *Bristol-Myers Squibb Co. v. Super. Ct. Cal.,* 582 U.S. 255, 262 (2017).

> A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. By taking such actions, a defendant purposefully avails itself of the privilege of conducting

/ / / / /

activities within the forum State, thus invoking the benefits and protections of its laws.

*Schwarzenegger*, 374 F.3d at 802; *see also Yahoo! Inc.*, 433 F.3d at 1206 (focus on activities such as delivering goods or executing a contract).

Based on Plaintiff's affidavit, as supplemented with non-contradictory facts from Defendants' affidavits, *see Am. Tel. & Tel. Co.*, 94 F.3d at 588, Defendants' conduct in relation to California is that they entered a contract with Plaintiff who is a California resident and communicated with Plaintiff regarding the contract while Plaintiff was in California. The motor coach they constructed was taken to California. On the other hand, Plaintiff reached out to Defendants in Idaho to enter the contract. Each party conducted contract negotiations from their home state. The contract contemplated that all construction and any warranty repairs be performed in Idaho. Plaintiff repeatedly travelled to Idaho during construction, at completion to take possession, and for subsequent warranty repairs. Plaintiff agreed "to be subject to exclusive jurisdiction" in Idaho. (Tolbert Decl. Ex. A at 2.)

In *Burger King*, the Supreme Court found jurisdiction over an out-of-state franchisee who had purposefully availed himself of Florida's law. 471 U.S. at 473. The Court held that

> with respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.

*Id*. Applying this principle, the Court found that while there was nothing in the record to show that the defendant had been to Florida before, personal jurisdiction existed because he "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id*. at 480. However, the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident. *Id*. at 478.

Unlike in *Burger King*, the contract here does not envision Defendants' continuing and wide-reaching contacts with California. To the contrary, the contract requires that Plaintiff return the motor coach to Idaho for any warranty repairs. (Tolbert Decl. ¶ 16; *see also id.* Ex. A at 1; Ex. B.)

Furthermore, Powerhouse's internet presence by operating a non-interactive informational website that is not targeted to California citizens is irrelevant for the purposes of personal jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418–20 (9th Cir. 1997) (maintaining a passive website advertisement does not confer personal jurisdiction). Nor did Defendants' contacts with Plaintiff while Plaintiff was in California create personal jurisdiction. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ("[O]rdinarily use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the forum state.").

Defendants' knowledge that Plaintiff was planning to bring the motor coach to California and storing it in the state while not in use also does not lead to a finding of personal jurisdiction. The foreseeability that a vehicle owner may bring it into the forum state by itself does not create sufficient minimum contacts. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295-96 (1980). Similarly, "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 459 (9th Cir. 2007). "Even a defendant's awareness that the stream of commerce may or *will* sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.* (emphasis added).

Finally, Plaintiff's reliance on state law cases is unavailing. State law cases are not binding authority in federal court on the issue of minimum contacts under the due process clause of the United States Constitution; however, they may be persuasive. The cases cited by Plaintiff are not persuasive because, unlike here, the defendants either delivered

goods to the forum state or otherwise had some further ongoing relationship with the forum state.  *See Secrest Mach. Corp. v. Superior Court*, 33 Cal.3d 664, 671 (1983) (defendant sent employee to California for two days to set up machine purchased from out-of-state); *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.*, 31 Cal.App.5th 543, 556–557 (2019) (defendant repeatedly sold and shipped its products to multiple distributors in California); *Luberski, Inc. v. Oleficio F.LLI Amato S.R.L.*, 171 Cal.App.4th 409, 419 (2009) (defendant contracted to deliver goods to plaintiff in California).

On the record before the Court, Defendants did not directly target California with their actions and their relationship to California was tangential and attenuated.  Plaintiff has failed to make a prima facie showing of purposeful availment.  It follows that Plaintiff has not carried his burden to show personal jurisdiction over Defendants.  *See Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

### 2. Transfer

Having determined this Court lacks personal jurisdiction over Defendants, the Court must determine whether the case should be dismissed or transferred to the District of Idaho pursuant to 28 U.S.C. § 1631.  *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990); *see also Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761–62 (9th Cir. 1990) (holding that district court lacked personal jurisdiction and remanding for determination whether transfer is in the interest of justice pursuant to 28 U.S.C. § 1631).

Section 1631 provides that, if the court determines it is lacking jurisdiction in a civil case, "the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed."  Although Defendants did not move to transfer the case under Section 1631, they did move to transfer the case under 28 U.S.C. § 1406 (for improper venue) and 28 U.S.C. § 1404 (for the convenience of parties and witnesses) to the District of Idaho.  A motion to transfer under Section 1631 is unnecessary "because of the mandatory cast of section 1631's instructions."  *In re McCauley*, 814 F.2d 1350, 1352 (9th Cir. 1987).

Defendants do not dispute that the case could have been filed in the District of Idaho and Plaintiff has agreed to exclusive jurisdiction in Idaho. (*See* Tolbert Decl. Ex. A at 2.) "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982).

"Normally transfer will be in the interest of justice because ... dismissal of an action that could have been brought elsewhere is 'time-consuming and justice-defeating.'" *Miller,* 905 F.2d at 262 (quoting *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962)). Under the circumstances of this case, the Court finds transfer appropriate.

### C.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is granted insofar as Plaintiff has failed to make a prima facie showing of personal jurisdiction in California. Defendants' request to dismiss is denied. This action is TRANSFERRED to the United States District Court for the District of Idaho. Defendants' motion to dismiss or transfer for improper venue is denied as moot.

**IT IS SO ORDERED.**

Dated: August 11, 2025

_____
Hon. M. James Lorenz
United States District Judge